IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SOURCE DIRECT HOLDINGS, INC., a Nevada Corporation<br><br>Plaintiff,<br><br>vs.<br><br>INTEGRITAS, INC., a Nevada Corporation, INTERNATIONAL MARKETING GROUP, INC.,a company of unknown origin, CORPORATE CAPITAL, INC., a company of unknown origin, JONQUIL INTERNATIONAL, INC., a Nevada Corporation, ASSET GROWTH STRATEGIES, INC., a Nevada Corporation, REYNA ENTERPIRSES, INC., a Nevada Corporation, OMNICAP, INC., an Antigua Corporation, SCOTT PHILLIP FLYNN, an individual PHILLIP FLYNN, an individual and ACTION STOCK TRANSFER, INC., a Utah Corporation<br><br>Defendants. | **AMENDED MEMORANDUM DECISION AND ORDER GRANTING IN PART DEFENDANTS' MOTION FOR AN ORDER COMPELLING DISCOVERY AND FOR AN AWARD OF ATTORNEY FEES**<br><br>Case No: 2:08-CV-520-DB-DN<br><br>District Judge:  Dee Benson<br><br>Magistrate Judge:  David Nuffer |

Defendant's Motion for an Order Compelling Discovery and for an Award of Attorney

Fees[1] is before this Court.  For the reasons set forth below, Defendant's motion is GRANTED IN

PART.

---

[1] Defendants' Motion for an Order Compelling Discovery and for an Award of Attorney Fees (Motion to Compel), docket no. 69 and Memorandum Supporting Defendants' Motion for an Order Compelling Discovery and for an Award of Attorney Fees (Memorandum in Support), docket no. 70, both filed July 16, 2009.  For administrative reasons, the clerk's office refiled each of these documents as docket nos. 71 and 72, respectively.

# I.  BACKGROUND

Source Direct produces and sells cleaning products.  Seeking to expand the market for its products, it came in contact with the Defendants (excluding Action Stock Transfer, Inc.).  These Defendants were involved in the business of marketing, promoting, and distributing other businesses' products.  Source Direct and these Defendants entered into a series of marketing agreements to promote Source Direct's products.  During this time, Source Direct converted from a privately held business to a publicly traded entity and issued a total of 8,000,000 shares of its stock to these Defendants as compensation for their services, in lieu of cash compensation.  This arrangement came together in early and mid-2004.

But in September 2005 the relationship came apart.  Source Direct rescinded the marketing agreements and demanded the return of the 8,000,000 shares of stock.  About the same time, these Defendants sought to sell this stock to flood the market.[2]  In response, Source Direct placed a temporary stop hold transfer order on the stock.  Defendant Action Stock Transfer, the stock transfer agent for all Source Direct stock, refused to hold any transfers beyond the date of filing any lawsuit.[3]

On December 9, 2005, Source Direct filed this suit in the Third District Court of Utah (Salt Lake County).  On December 16, 2005, that court ordered Source Direct to post a $480,000 cash bond as security for the stock in dispute.  The case was removed to this court on July 9, 2008.

---

[2] First Amended Complaint ¶ 53.

[3] First Amended Complaint at 2-11, filed June 30, 2008, as found in docket no. 2, filed July 9, 2008, and Defendants' Answer to First Amended Complaint, Amended Counterclaim, and Amended Third-Party Complaint (Amended Third-Party Complaint) at 15-22, docket no. 42, filed December 3, 2008.

Source Direct's request to place a temporary stop hold on Defendants' stock transfer is the catalyst of this lawsuit.  Each party claims that the request was a result of the other party's attempts to defraud.  Each party alleges violations of federal and state securities laws and common law causes of action such as breach of contract and fraud

Plaintiff claims that Defendants conspired to control 8,000,000 shares of its stock; to manipulate the stock to keep its price low; and to cause such hardship that they could take over the company.  Plaintiff Source Direct says that when it learned Flynn's true identity, it sought to cancel the 8,000,000 shares.[4]

Defendants contend that Plaintiff's officers were milking the company of resources necessary for growth, and simultaneously siphoning Defendants' investments into their own pockets.  Defendants say that Source Direct sought to cancel the 8,000,000 shares when Jim Hunter, principal in two of the Defendant companies, began asking questions about how Source Direct was compensating its officers and capitalizing itself.[5]

## Discovery Requests

In April 2007, the Defendants propounded a set of interrogatories, requests for admission, and requests for production of documents to the Plaintiff. [6]  Following removal to federal court, Defendant Integritas propounded further discovery.[7]  Disputes arose regarding the sufficiency of

---

[4] First Amended Complaint at 2-11.

[5] Amended Third-Party Complaint at 15-22.

[6] Plaintiff's Objections and Responses to Defendants' Joint First Set of Interrogatories, Requests for Admissions and Requests for Production of Documents, attached as Document 70-3 to the Memorandum in Support.

[7] Source Direct Holdings, Inc.'s Responses to Integritas, Inc.'s Second Set of  Requests for Production of Documents, attached as Document 70-6 to the Memorandum in Support.

the Plaintiff's responses to both sets of discovery but have now been narrowed by the parties to

three issues.  The parties' efforts  to narrow the dispute are appreciated and contribute to the "just,

speedy and inexpensive determination" of the case and motion.  This order will address the three

remaining issues in turn.

## II.  DISCUSSION

### A. Integritas' Requests for Production Nos. 4 and 5

Request No. 4 seeks documents regarding "any compensation, in dollars and in kind,"

paid by Plaintiff to its "board of directors, officers, and senior managers, and to members of their

respective immediate families."  Request No. 5 seeks documents regarding "any benefits, travel

and entertainment, and stock options" given by Plaintiff to the same potential recipients.[8]

Defendants seek explanation and justification for pay and bonuses of Source Direct's

president and secretary/treasurer.  Defendants claim that this information is directly related to

their causes of action for breach of fiduciary duty, breach of covenants of good faith and fair

dealing, and federal and state law securities fraud claims.  Defendants question how the

compensation could be so high when the company showed little or no profit and had little or no

working capital.  They say they wouldn't have entered into the stock-for-services deal if the level

of compensation had been known.

Jim Hunter, the principal in two of the defendant companies, personally invested a total of

$150,000 in the deal.  Defendants claim that when Hunter began asking questions about Source

Direct's operations and not receiving answers, Defendants requested stock transfers; Source

---

[8] Source Directs Holdings, Inc.'s Responses to Integritas, Inc.'s Second Set of  Requests
for Production of Documents at 3, attached as Document 70-6 to the Memorandum in Support.

Direct put a stop order on those transfers; and Source Direct cancelled the stock.

Defendants want answers to the questions they claim are at the heart of the transfer cancellations which are the genesis of this lawsuit.  Defendants argue that this detailed information on compensation should have been available when Source Direct's audited financial statements of 2004, 2005, and 2006 were prepared.  The requests also seek actual cancelled checks used to pay any type of executive compensation.[9]

Source Direct says the compensation information is available on the SEC EDGAR website and gave its Central Index Key Number but Defendants say that site does not provide the detail needed.

These documents may prove or disprove the Defendants' claims about the alleged actions of Smith and Arave.  For example, the documents may clarify a first blush shock over the company's profit margin vis-a-vis the salaries and bonuses paid to Smith and Arave.  The documents may also show that auditors opined that the compensation and expenses were justified. While this information may not ultimately be relevant and admissible, these two document requests are permissible and any documents responsive to them, including but not limited to, the audited financial statements and cancelled checks, shall be made available for inspection and copying.

---

[9] Defendants' Reply Memo in Support of an Order Compelling Discovery and for an Award of Attorney's Fees (Reply Memo) at 2-6, docket no. 78, filed August 27, 2009.

B. Integritas' Requests for Production No. 16

Source Direct requested the temporary stop hold transfer order in September 2005. It filed

suit on December 9, 2005 and pursuant to court order, Source Direct posted the $ 480,000 bond

on December 16, 2005. The Plaintiff's First Amended Complaint and the Defendants' Amended

Counterclaim and Amended Third-Party Complaint relate to events that occurred between the

formation of the parties' relationship in 2003 and the September 2005 temporary stop hold

request.

Request No. 16 seeks to obtain "all Documents that evidence and/or are related to the

source and filing" of this cash bond.[10]  Source Direct argues that this information does not relate

to claims in the suit, since the bond was posted after suit was filed. It argues that Defendants are

now trying to make out a "control person" claim, which was not alleged in their third-party

complaint, and are trying to discover their way into such a claim.[11]

The Defendants say they are not making a new claim. Rather, they argue that Don Price,

who posted the bond, may be a Rule 17(a) party in interest and therefore the information is

discoverable. They argue that in a June 2005 SEC filing, Price is shown to own 3.26 million

shares of Source Direct stock and warrants. In December 2006 (a year after Source Direct

cancelled Defendants' 8 million shares and warrants), Source Direct did a 25 to 1 reverse split of

its shares. As a result, Price owned 6.85 % of Source Direct stock in his own name. Because of

that ownership, and because Price posted the bond, Defendants claim he may be a "control

---

[10] As found in Source Direct Holdings, Inc.'s Responses to Integritas, Inc.'s Second Set of  Requests for Production of Documents at 7, attached as Document 70-6 to the Memorandum in Support.

[11] Memorandum in Opposition to Defendants' Motion for an Order Compelling Discovery (Opposition Memorandum), docket no. 77, filed August 18, 2009, at 4-5.

person" and thus a Rule 17(a) party in interest.[12]  Defendants wonder if he played any role in the

decision to cancel their 8 million shares:

> If the light of day can be shined on this matter and Mr. Price is forced to take some
> responsibility for this lawsuit, the Defendants submit it will likely go a long way
> towards resolving this case.[13]
>
> . . .
>
> The "control person" liability statutes under state and federal securities laws
> demonstrate that, if nothing else, shareholders are entitled to know who "controls"
> the companies they invest in.  And just because a public company has an outside,
> non-officer or director "control person" doesn't require a shareholder to sue him.[14]

Defendants also argue that Source Direct's November 2005 written demand for an accounting
was

a ploy to justify cancelling the 8,000,000 shares.  Then Defendants state:

> Now we find out that Mr. Price may have controlled Source Direct at this point in
> time by virtue of his ownership, his ability to finance the Company, and otherwise.
> Since the Defendants do not know and do not understand why their stock was
> canceled–*perhaps the principal issue in this case*–it may be because Mr. Price
> demanded it in order that he or his cronies or affiliates would be positioned to sell
> their stock in the market first.  The fact is that we just don't know.[15]

The bond was posted one week after suit was filed and therefore long after the parties'

dispute had erupted and the business deal had fallen apart.  Defendants do not make any reference

to it in their original or amended answer, counterclaim, or third-party complaint.  They

propounded this discovery request almost three years after suit was filed.  Because of the timing

of the bond, the relevancy of this request is marginal at best.

The original and amended counterclaim and third-party complaint specifically allege the

---

[12] Reply Memo at 7-9.

[13] *Id.* at 8.

[14] *Id.*

[15] *Id.* at 9-10 (emphasis in original).

wrongful acts that support Defendants' claims of securities fraud and the various breaches of duty. They do not allege that Price or someone else was behind the scenes pulling the strings to defraud Defendants. Any arguments that Price may have been a control person are outside the pleadings.      Defendants' stated reasons to obtain this information are too speculative to support discovery. Defendants say they aren't required to sue Price if he is a control person, but that  this information *may* force him to take some responsibility for this lawsuit.[16]  They say the information is "*likely* go a long way towards resolving this case."[17]  These are mere possibilities. It is also too speculative to suggest that if Mr. Price posted this bond, then he financed Source Direct and could therefore order the stock cancellation–all so he and his allies could perhaps sell their stock first. The posting of the bond is far removed in time from the actions complained of.

The Court agrees with the Plaintiff's position and finds that the requested information is not relevant to the claims raised by the pleadings of either party, so it is not discoverable.

The Defendants argue that this information may assist them in deciding whether to request an increase in the amount of the bond. Again, timeliness is an issue because the bond has been posted for almost four years. Such a request should have been made long ago–perhaps even before removal.

---

[16]  *Id.* at 8.

[17]  *Id.*

Defendants claim that Source Direct has gone out of business and that Smith and Arave may well be judgment-proof.[18]  It would appear that Defendants' argument that Price may be a control person is really a search for a solvent judgment debtor.  But this is not a legitimate subject for pre-judgment discovery.

<u>C. Integritas' Interrogatories Nos. 7-11</u>

The Amended Scheduling Order provides for Discovery Limitations including "Maximum Interrogatories by any Party to any Party - 15."[19]  Defendant Integritas propounded eleven interrogatories on October 6, 2008 .[20]  Source Direct answered on December 3, 2008.  It objected that some of these interrogatories were duplicative of a previous interrogatory and as to all of them stated "Source Direct objects to this Interrogatory No. [-] because it exceeds the 15 Interrogatory limit imposed by Magistrate Judge David Nuffer herein at the Initial Pretrial Conference held on September 9, 2008." [21]

Source Direct argues that including the sub-parts found in Interrogatory Nos. 1-6, the limit of 15  interrogatories is exhausted and that therefore, it is not required to respond to Interrogatory Nos. 7-11.  Source Direct also argues that the limit of 15 "maximum interrogatories by any Party to any Party" means it only has to answer a total of 15 interrogatories from all 8 defendants, not answer as many as 120 interrogatories (15 from each of the 8 defendants).[22]

---

[18]  *Id.*

[19]  Amended Scheduling Order, docket no. 48, filed December 15, 2008.

[20]  Memorandum in Support at 3.

[21]  Source Direct Holdings, Inc.'s Responses to Integritas, Inc.'s Second Set of Interrogatories at 6-7, attached as Document 70-4 to the Memorandum in Support.

[22]  Opposition Memorandum at 5-6.

Defendants admit that this set of interrogatories exceeded the 15 limit from one defendant.

After their August 4, 2009 meet and confer, they wrote on August 12, 2009 that Source Direct

could go ahead and answer these disputed interrogatories or another defendant could propound

them verbatim and Source Direct would have to answer them.[23]  Defendants also argue that the

meaning of 15 by any party to any party is plain English and that Source Direct's interpretation

would mean that each defendant could only propound 1.6 interrogatories each.[24]   The Court

agrees with some of the arguments of each side.  But the total number of interrogatories seems

reasonable, in spite of the language of the Scheduling Order.  Therefore, Source Direct is required

to answer Interrogatory Nos. 7-11 as propounded by Integritas.

Attorneys Fees

Defendants seek expenses, including attorney's fees, incurred in this motion.  However,

the position of Source Direct was "substantially justified"[25] and fees will not be awarded.

---

[23]  August 12, 2009 letter from J. Michael Coombs to Jonathan Hafen and Matthew J. Ball as excerpted in Defendants' Reply Memo at 10-11.

[24] Reply Memo at 10-12.

[25] *Hutchinson v. Pfeil*, 105 F.3d 562, 569 (10th Cir. 1997).

## <u>ORDER</u>

IT IS HEREBY ORDERED that the motion to compel[26] is GRANTED IN PART, in that :

1.     Source Direct shall respond to Requests for Production Nos. 4 and 5 within 15

       days of this Order;

2.     Source Direct need not respond to Request for Production No. 16;

3.     Source Direct shall respond to Interrogatory Nos. 7-11; and

4.     Defendants' request for attorneys fees[27] is denied.

October 20th, 2009.

BY THE COURT:

David Nuffer
United States Magistrate Judge

---

[26] Docket no. 69, filed July 16, 2009.

[27] Docket no. 71, filed July 16, 2009.